IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| S.F.H., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:22-cv-00075-CHW |
| | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY,** | : | Social Security Appeal |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff S.F.H.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because substantial evidence supports the ALJ's finding as to Plaintiff's residual functional capacity, the decision in Plaintiff's case is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title XVI supplemental security income on February 6, 2019, and for Title II disability benefits on October 13, 2020, alleging disability beginning on April 11, 2011, due to asthma, anxiety, nerve damage in both hands and legs, back pain, and acid reflux. (Ex. 1A, 11B, 3D). Plaintiff later amended the alleged onset date to December 31, 2016, which is also her date last insured (DLI). (R. 17, 42, 225). After Plaintiff's Title XVI application was denied initially and on reconsideration at the state agency level of review (Exs. 1A, 3A), Plaintiff requested further

review before an administrative law judge (ALJ). The reviewing ALJ held a telephonic hearing on March 4, 2021.[1] (R. 35-80). The ALJ issued an unfavorable opinion on April 7, 2021. (R. 12-34). Plaintiff's request for review of that decision by the Appeals Council was denied on December 23, 2021. (R. 1-6). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in

---

[1] A previous hearing on August 7, 2020, in front of a different ALJ, was continued to allow Plaintiff to file a Title II application and escalate its review. (R. 81-93). Plaintiff requested that the application be merged with her Title XVI application. (R. 367).

substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The medical treatment in the record consists urgent care and emergency room (ER) visits, primary care treatment, and consultative exams. There is an early record showing that Plaintiff went to urgent care in August 2007 for back and hip pain, where x-rays showed degenerative changes most pronounced at L1-L3. (R. 691, 693, 701). Plaintiff was diagnosed with sciatica and discharged. (R. 699). Other than this visit, Plaintiff's treatment dates from 2016 through 2020.

Plaintiff visited the ER for a stomach virus in August 2016. (R. 821). Plaintiff reported to the ER in February 2017 for respiratory distress, including wheezing and shortness of breath. (R. 647). Wheezing was noted during inspiration and expiration. (R. 649). A chest x-ray was normal, and her lungs were clear. (R. 659, 815). No wheezing was present at discharge. (R. 653). Plaintiff was diagnosed with bronchitis and discharged with an albuterol inhaler and Zithromax. (R. 654). Plaintiff returned to the ER in March 2017, via ambulance, with similar breathing issues. (R. 662). Plaintiff had diminished breath sounds and some wheezing was present. (*Id*.) A chest x-ray was clear. (R. 679). She was given a breathing treatment (R. 663, 684), and she left the ER against medical advice prior to being formally discharged. (R. 670-671).

Plaintiff underwent pulmonary function testing on January 10, 2018, in connection with a previous application. (Ex. 13F). Dr. Khuram Ashraf saw Plaintiff for a consultative exam on January 27, 2018, also in connection with a previous application. (Ex. 14F). She reported a history of asthma and dated her last major attack to February 2017. (R. 862). The notes specifically indicate a history of asthma but not a history of COPD. (R. 863). Plaintiff had clear lungs, no wheezing, and shortness of breath on exertion but not at rest. (R. 864). She could not walk on her toes or heels and the straight leg raising test was positive on her right side at the sitting and supine positions. (*Id.*) There were no abnormalities in Plaintiff's fine motor skills or motor strength. (R. 865, 869). Dr. Ashraf limited Plaintiff's ability to walk, stand, bend or stoop. (R. 865). He did not limit Plaintiff's ability to work during a regular workday due to her breathing issues despite the observed minimal shortness of breath. (R. 865-866).

Plaintiff visited the ER in early February 2019 for complaints of cough, congestion, shortness of breath, and dental abscess. (R. 423). Plaintiff's history of asthma and smoking were noted. (R. 423-424). Plaintiff denied chest pain or other muscle swelling and pain. (R. 424). A chest x-ray showed low lung volumes and cardiomegaly, but the lungs and pleural spaces were clear and "no acute process" was seen. (R. 431). Plaintiff was diagnosed with acute asthmatic bronchitis, given albuterol, and discharged. (R. 427-429). A few days later, Plaintiff reported to urgent care for a sore throat. (R. 380). Although the chief complaint also included shortness of breath, and though Plaintiff received an inhaler, no shortness of breath was listed in the review of symptoms, her lungs were clear, and her breath sounds were equal. (R. 380-381). About two weeks later, Plaintiff returned to the ER with complaints of gum and jaw swelling with tooth and mouth pain. (R. 417). Plaintiff denied shortness of breath or wheezing, and the physical exam noted no respiratory distress. (R. 418, 419). Notes indicated that Plaintiff smoked every day. (R. 418).

Plaintiff went to the ER in May 2019 after being stung on her foot by yellow jackets. (R. 605). Plaintiff had no shortness of breath at this visit. (R. 607). Her lungs were clear, and no wheezing was noted. (R. 608). Despite the swelling in her foot, the physical exam showed no numbness or tingling. (R. 607).

At an ER visit in February 2020, Plaintiff reported a cough and exacerbation of her asthma. (R. 573, 575). Treatment providers described her lungs as clear, but upon examination, also observed wheezing and coarse breath sounds (R. 574, 576). She received a breathing treatment while in the ER. (R. 573, 588). Her chest x-ray was normal. (R. 577). Notes also indicate that Plaintiff had cellulitis in her foot. (R. 575, 585). Her discharge diagnosis was asthma exacerbation. (R. 578).

Plaintiff returned to the ER in March 2020 with shortness of breath and wheezing. (R. 518). She explained she had not been using an inhaler due to finances. (*Id.*) The physical examination showed that Plaintiff's lungs were clear, her breathing was non-labored, and she had equal breath sounds. (R. 521). A chest x-ray also showed clear lungs, and there was no evidence of pleural effusion or acute cardiopulmonary process. (R. 523). Treatment providers noted differential diagnoses of pneumonia, COPD, and upper respiratory infection. (R. 521), but her discharge diagnosis was asthma exacerbation. (R. 523). She received a breathing treatment in the ER (R. 556), and she was given an albuterol inhaler with instructions to follow-up at First Choice Primary Care. (R. 523).

Plaintiff established treatment at First Choice Primary Care beginning in March 2020. (Exs. 5F, 17F; R. 450). Her history notes do not reflect asthma. (R. 450). At the initial visit, she had no shortness of breath. (R. 451). Her lungs were clear, and no wheezing was noted. (R. 452). None of the diagnoses included any respiratory illness. (R. 452). Plaintiff was referred for a

mammogram. (R. 454). Following the mammogram, which showed microcalcifications (R. 457-458, 461-462), Plaintiff was referred to a surgeon for a biopsy. (R. 455, 497). In April 2020, Plaintiff had no dizziness, chest pain, or shortness of breath. (R. 447). Her lungs were clear without any wheezing. (R. 448). Plaintiff missed a late April appointment with Dr. Williams, the surgeon to whom she was referred. (R. 498). At a May 2020 follow-up telehealth appointment at First Choice Primary, Plaintiff denied chest pain. (R. 439). Plaintiff confirmed that she smoked every day and was not ready to quit. (R. 440). Plaintiff stated that would reschedule the missed appointment with the surgeon. (*Id*.) Notes also indicate that Plaintiff should increase her "physical activity as tolerated to 5 days/week for approximately 30-60 [minutes]." (R. 441). Plaintiff then failed to appear at the re-scheduled consultation with Dr. Williams. (R. 513).

In August 2020 at First Choice Primary, the noted primary concerns related to Plaintiff's hypothyroidism, depression, pre-diabetes, and kidney disease. (R. 924). Plaintiff denied any shortness of breath. (*Id*.) Her lungs were clear. (R. 926). In December 2020, Plaintiff denied any chest pain or shortness of breath. (R. 905). She remained a smoker. (R. 906-907). Her lungs were clear without any wheezing, and she had regular breathing. (R. 907). The nurse practitioner referred Plaintiff to a cardiologist following an abnormal EKG. (R. 909). Throughout the treatment at First Choice Primary Care, no visit reflects a diagnosis or any treatment for asthma or respiratory issues. *See* (Exs. 5F, 17F).

Plaintiff saw Dr. Farhat Shireen for a consultative exam in September 2020. (Exs. 15F, 16F). Plaintiff's chief complaints were shortness of breath, generalized body pain, finger numbness, and depression. (R. 871). Her complaints of pain were mostly related to her hips. (*Id*.) She described the numbness and tingling in her fingers as a recent problem that was worse in the mornings but lasted all day. (*Id*.) She admitted to having shortness of breath and being a smoker.

(R. 871-872). She stated she had been "taking COPD medications since 2014." (R. 872). She last worked in 2011. (R. 871). Plaintiff described "not being able to do much due to…shortness of breath" and having moderate difficulty with household chores. (R. 871-872). Dr. Shireen listed COPD, but not asthma, as part of Plaintiff's past medical history. (R. 872).

During the physical exam, Plaintiff had an antalgic gait, which Dr. Shireen described as lurching and unpredictable, but Plaintiff did not require an assistive device. (R. 873). Plaintiff showed no distress while sitting or lying flat, but she had shortness of breath and pain during walking and standing. (*Id*.) However, her respiratory exam was normal without any wheezing or rales, and her lungs were clear. (*Id*.) Her upper and lower extremities were normal. (R. 873-874). Plaintiff's hands showed no tenderness, redness, warmth, or swelling. (R. 874). Her grip and pinch strengths and range of motion were normal in both hands. (*Id*.) Plaintiff had some thoracic tenderness, and other testing was limited. (*Id*.) There was no hip joint tenderness. (*Id*.)

Dr. Shireen listed his impressions as COPD, obesity, generalized body pain, and bilateral hand numbness and tingling. (*Id*.) He opined that Plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull would be severely limited. (R. 875). He further explained that Plaintiff struggled to walk and would have to sit every two to three minutes. (R. 879). He dated Plaintiff's limitations to 2011. (R. 885). He further stated that he reviewed available treatment records, but he did not specify which records he reviewed. *See* (R. 871).

Plaintiff testified at the hearing before the ALJ. At the time of the hearing, Plaintiff was 56 years old with an eighth-grade education. (R. 45). She reported not having worked since 2011, initially due to depression. (R. 46, 64-66). She explained that she cannot stand, sit, or lie down in one spot for too long, partly due to sciatica. (R. 55, 62). Plaintiff did not know exactly what caused her sciatica. (R. 59). Leg numbness and breathing issues prevent her from walking long distances.

7

(R. 55). She limited her ability to stand and walk to no more than 10 minutes at a time. (R. 62-64). She spoke about her recent referral to a cardiologist. (R. 56). She described having had breathing problems for several years in connection to her asthma diagnosis. (R. 56-57). She testified that she uses a nebulizer and inhaler "every once in a while." (R. 61). She also stated that her feet, toes, and hands get numb and described having problems sleeping. (R. 57). She related the numbness she experiences to the one ER visit for yellow jacket stings. (R. 59-60).

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2016, the amended onset date and her date last insured. (R. 15, 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, asthma, chronic kidney disease, hypothyroidism, degenerative changes to spine, and tobacco use disorder. (R. 18). The ALJ also found that Plaintiff suffered from gastroesophageal reflux disease, prediabetes, depression, hyperlipidemia, and dyslipidemia. (*Id.*) The ALJ deemed any alleged impairments for hand numbness with tingling (neuropathy) and chronic obstructive pulmonary disease (COPD) to be not medically determinable. (R. 19). The ALJ additionally noted that obesity was considered and accounted for in the decision although it was not recognized as a listing impairment. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 20-21). Therefore, the ALJ assessed Plaintiff's RFC and

determined that Plaintiff could perform a full range of light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416. 967(b)[2] and with the following exceptions:

> [The claimant] can frequently balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, and scaffolds. She can have frequently exposure to pulmonary irritants such as odors, dusts, gases, fumes, and poorly ventilated areas and to workplace hazards, such as open machinery and unprotected heights.

(R. 21).

Based on this RFC, the ALJ found at step four that Plaintiff was capable of performing her "past relevant work as a cashier II and as a composite of cashier II and short order cook, both as performed by [Plaintiff] and as generally performed in the national economy." (R. 27). He excluded Plaintiff's returning to past work as a physical inventory clerk. (R. 28). The disability analysis concluded at step four, and as a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 31, 2016, through the date of the decision. (R. 28-29).

## ANALYSIS

Plaintiff argues that the finding that Plaintiff is not disabled cannot be supported by substantial evidence because the ALJ improperly excluded several of Plaintiff's severe impairments at step two of the disability analysis and the ALJ ignored the recommendations and

---

[2] As defined by these regulations, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of alarm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

9

record-supported limitations suggested by consultative examiner, Dr. Shireen, when formulating the RFC. There is no error in how the ALJ evaluated the consultative examiner's opinion, how she determined Plaintiff's medically determinable impairments, or how the ALJ developed the RFC. The decision is supported by substantial evidence. There is no basis for remanding Plaintiff's case.

At the second step of the disability analysis, [an ALJ] considers the medical severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). A claimant must have at least one severe physical or mental impairment to be disabled. *Id.* Therefore, at least one severe impairment is needed to proceed past step two in the disability analysis. *Id.*; *see also Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) ("[F]inding any severe impairment…is enough to satisfy step two.") Step two "is a 'threshhold inquiry' and 'allows only claims based on the most trivial impairments to be rejected'. *Schink v. Comm'r of Soc. Security*, 935 F.3d 1245, 1265 (11th Cir. 2019). Often, an ALJ will also discuss both severe and non-severe impairments at step two, and, if supported by the record, even the non-severe impairments' effects on a claimant's ability to work must still be contemplated when formulating an RFC. *See* 20 C.F.R. §§ 404.1545(a)-(b) and 416.945(a)-(b); *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064-1065 (11th Cir. 2021). As long as the ALJ considers these effects in formulating the RFC, it is harmless error for an ALJ to fail to label or to list a certain impairment as severe at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Plaintiff acknowledges that the exclusion of "severe impairments at Step Two, in and of itself, is not legally deficient," but she maintains that the ALJ nonetheless failed to develop an RFC inclusive of all of Plaintiff's limitations. (Doc. 20, p. 4).

As a threshold matter, the ALJ did not fail to list all Plaintiff's impairments at step two, and he did not deem them unworthy even of "lip service" as Plaintiff asserts. (*Id*.) Instead, the ALJ discussed Plaintiff's alleged impairments of COPD and hand tingling but did not find they were severe because he found that the impairments were not medically determinable. (R. 19). To be medically determinable, "an impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. [It] must be established by objective medical evidence medical evidence from an established source." 20 C.F.R. §§ 404.1521 and 416.921. The ALJ's exclusion of the complained-of impairments at step two is connected to his evaluation of the September 2020 consultative exam, which is addressed more fully below. The Court finds no error in the ALJ's classification of these impairments as not medically determinable.

An RFC is an assessment based on all the relevant evidence of a claimant's ability to work despite her impairments, even if those impairments were not deemed severe. 20 C.F.R. §§ 404.1545(a)-(b) and 416.945(a)-(b). Plaintiff correctly notes that it is not enough for an ALJ to say that all Plaintiff's symptoms and medically determinable impairments were considered for the RFC to be supported by substantial evidence; the decision must demonstrate that she did. *Pupo*, 17 F.4th at 1064-1065. Plaintiff argues that the ALJ failed to account for the limitations caused by her generalized body pain, COPD, and hand numbness and tingling, and, therefore, that the RFC is not supported by substantial evidence. (Doc. 14, p. 4-5).

Plaintiff's challenge to the ALJ's exclusion of certain impairments in developing the RFC focuses on the ALJ's evaluation and consideration of Plaintiff's September 2020 consultative exam by Dr. Shireen.[3] Plaintiff argues that the ALJ improperly considered the impairments

---

[3] In her reply brief, Plaintiff states that "in determining whether a physician's medical opinion is persuasive or not, the ALJ must specifically state how much weight they gave to the same, and their reasons for doing

11

assessed by Dr. Shireen, and thereby, the ALJ failed to account for these limitations when developing the RFC. (Doc. 14, p. 6-7). If the ALJ had appropriately incorporated Plaintiff's limitations, Plaintiff argues, the ALJ would have found her to be capable of less than sedentary work, which, pursuant to the vocational expert's testimony and the GRIDs, would preclude her from any gainful employment. (*Id.*) Plaintiff's challenge is without merit.

As summarized above, Dr. Shireen assessed Plaintiff with COPD, obesity, generalized body pain, and bilateral numbness and tingling of the hands, and he severely limited her functional abilities. (R. 875). The ALJ correctly recited Dr. Shireen's findings and opinions and then assessed the results for consistency and supportability internally and against the record as a whole. (R. 26-27). For example, Dr. Shireen assessed Plaintiff with bilateral numbness and tingling of the hands that limited her to only occasional use of her hands, but upon examination Plaintiff's hands were normal. (R. 873-874). He diagnosed Plaintiff with COPD but performed no breathing tests, and Plaintiff's examination was normal other than some shortness of breath on exertion. (R. 873). Dr. Shireen stated that Plaintiff had a balance issue and an antalgic gait but said Plaintiff did not require

---

so." (Doc. 20, p. 1-2). Plaintiff seems to combine the prior and new regulations concerning the evaluation of medical opinions. An ALJ is no longer required to assign a weight to medical opinions or even evaluate each piece of evidence. On March 27, 2017, the Social Security Administration revised the regulations regarding medical opinions from a claimant's treating sources. The regulations now specify that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). The decision must articulate how persuasive the medical opinions and prior administrative findings were found to be. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). The decision is not required to articulate the determination for each and every record, however, and instead may discuss the source of the opinion in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). The following factors are used to consider and weigh the record: supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4) and 416.920c(c)(1)-(4). The most important factors are supportability and consistency, and the decision must state how these factors were considered in the disability determination. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). Because Plaintiff's applications were filed in February 2019 and October 2020, respectively, the new regulations apply.

an assistance device to walk. (R. 873-874). Finally, despite examining Plaintiff only once in 2020, Dr. Shireen opined that Plaintiff's limitations dated back to 2011. (R. 885.)

Some of Dr. Shireen's observations, as the ALJ noted, are not documented anywhere else in the record, such as Plaintiff's antalgic gait, hand numbness, and the COPD diagnosis, except for an initial differential diagnosis at one ER visit. *See* (R. 521). Dr. Shireen did not list asthma as a present or historical impairment, which would have likely been included instead of COPD if he had reviewed any of Plaintiff's prior records. The ALJ found that "the opinion is not persuasive because the limitations are overstated when compared to the objective findings" and that "other than the opinion that [Plaintiff] does not require an assistive device for ambulation, the opinion is not persuasive or well supported." (R. 27). The ALJ applied to correct standard and thoroughly explained the basis of her evaluation of Dr. Shireen's opinion.

The ALJ's evaluation of the Dr. Shireen's conclusions is also bolstered against the ALJ's basis for finding that COPD and hand numbness with tingling were not medically determinable impairments at step two. Aside from Dr. Shireen's assessment and the ER visit for the yellow jacket sting on her foot, no other portion of the record diagnosed Plaintiff with numbness or tingling in her upper extremities. Even the physical examination following the yellow jacket sting did not note any numbness or tingling. (R. 607). Plaintiff has repeatedly been treated for asthma, but she has never received a COPD diagnosis other than from Dr. Shireen. Even Dr. Ashraf differentiated between Plaintiff's history of asthma and a diagnosis for COPD in his consultative exam. *See* (R. 863). Pulmonary testing, as noted by the ALJ, fell below listing requirements (R. 25, Ex. 13D, *See* Listing 3.02), thus undermining a COPD diagnosis. Moreover, nearly every exam and chest x-ray, including the one closest in time to Dr. Shireen's exam, showed Plaintiff's lungs to be clear. *See* (R. 523). Only one chest x-ray from February 2019 showed low lung volumes. (R.

413). The ALJ's analysis of these impairments correctly described the medical record. These impairments did not meet the threshold for medical determinable impairments because of a lack of documentation and support in the record, and it therefore follows that the limitations Dr. Shireen placed on Plaintiff due to these impairments were rejected by the ALJ.

In developing the RFC, the ALJ thoroughly discussed the record, which included state agency physician reviews, medical records, consultative exams, and Plaintiff's testimony. (R. 21-27). An ALJ need only account for limitations supported by relevant evidence. Nothing in the supported medical record limited Plaintiff's abilities as severely as Plaintiff suggested in her hearing testimony. As recounted in the medical record section above, while there is a record of emergency room treatment for asthma with breathing treatments, no provider at First Choice Primary Care treated Plaintiff for asthma or prescribed (or even listed) a nebulizer or inhaler in her medications. Other than one urgent care visit in 2007 and the ER visit for the yellow jacket sting in 2019, there is little, if any, treatment record indicating pain, numbness, sciatica, or other ailments that would limit Plaintiff to the extent that Plaintiff indicated in her testimony or to the extent that Dr. Shireen suggested. The ALJ's findings regarding Plaintiff's medically determinable impairments and limitations appear supported by the record - especially under the substantial evidence standard of review.

The ALJ has the responsibility to assess the RFC. 20 C.F.R. §§ 404.1546(c) and 414.926(c). In doing so, an ALJ is not required to include limitations in the RFC which she rejects as not supported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). The ALJ considered Plaintiff's limitations and posed hypotheticals covering the limitations as supported by the record. The ALJ's reasoning is clearly articulated with citations to the relevant record, and the resulting RFC is supported by substantial evidence.

## CONCLUSION

As discussed above, there is no error with the manner in which the ALJ considered the consultative examiner's opinion, and the limitations included in the RFC are supported by substantial evidence. Based on the foregoing, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, this 24th day of August, 2023.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge